## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DAVID W.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-cv-03370 (GMH)** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff David W. brought this action seeking to reverse the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi ("Defendant" or "the Commissioner"), denying Plaintiff's application for Supplemental Security Income ("SSI") Benefits under Title II of the Social Security Act, 42 U.S.C. § 405(g). He alleges that the Administrative Law Judge ("ALJ") failed to properly evaluate all the evidence in determining that he is not disabled. Specifically, Plaintiff alleges two challenges to the ALJ's calculation of Plaintiff's residual functioning capacity ("RFC"). First, Plaintiff argues that the ALJ decision did not contain adequate rationale for concluding Plaintiff could interact with the general public. Second, Plaintiff contends that the ALJ improperly dismissed the medical opinion of a treating physician in formulating Plaintiff's RFC. The Commissioner argues that the ALJ's decision denying Plaintiff benefits should be affirmed

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://perma.cc/N9T2-U5XG.

because the ALJ rested his findings on substantial evidence.[2]  For the following reasons, Plaintiff's motion will denied and the Commissioner's motion will granted.

## I.       BACKGROUND

### A.     Statutory and Regulatory Framework

To be eligible for SSI benefits under the Social Security Act, the Social Security Administration must find a claimant to be "disabled," meaning that the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To make that determination, an ALJ gathers evidence, holds a hearing, takes testimony, and performs the following five-step, sequential inquiry of the disability claim:

Step one:  whether the claimant is engaging in "substantial gainful activity";[3]

Step two:  whether the claimant has a "severe" medically-determinable physical or mental impairment or combination of impairments;[4]

Step three:   whether the claimant's impairment is equivalent to one of the disabling impairments listed in the appendix of the relevant regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings");

---

[2] The relevant docket entries for purposes of this Memorandum Opinion and Order are (1) the administrative record, ECF No. 12; (2) Plaintiff's motion for judgment of reversal, ECF No. 20; (3) Defendant's motion for judgment of affirmance and opposition to Plaintiff's motion for judgment of reversal, ECF No. 21; and (4) Plaintiff's opposition to Defendant's motion for judgment of affirmance and reply to Defendant's opposition to Plaintiff's motion for judgment of reversal, ECF No. 23.  The page numbers cited herein are those assigned by the Court's CM/ECF system.

[3] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit."  20 C.F.R. § 416.910; *see also* 20 C.F.R. § 404.1510 (defining "substantial gainful activity" for the purposes of Social Security disability insurance benefits ("DIB") claims).  "If [the claimant is] doing substantial gainful activity, [the Social Security Administration] will find that [the claimant is] not disabled." 20 C.F.R. § 416.920(a)(4)(i); *see also* 20 C.F.R. § 404.1520(a)(4)(i) (defining the step one inquiry for DIB claims).

[4] An impairment or combination of impairments is "severe" if it "significantly limit[s]" a claimant's "physical or mental ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "seeing, hearing, [or] speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; exercising judgment; "[r]esponding appropriately to supervision, co-workers[,] and usual work situations"; or "[d]ealing with changes in a routine work setting."  20 C.F.R. § 416.922; *see also* 20 C.F.R. § 404.1522 (defining a severe impairment for the purposes of DIB claims).

After step three, the ALJ determines the claimant's residual functional capacity ("RFC")—i.e., the most he or she is able to do notwithstanding his or her physical and mental limitations;

Step four:  whether the impairment prevents the claimant from performing his or her past relevant work;[5] and

Step five:  whether the claimant, in light of his or her age, education, work experience, and RFC, is unable to perform another job available in the national economy.[6]

*See* 20 C.F.R. § 416.920; *see also* 20 C.F.R. § 404.1520 (outlining the five-step sequential inquiry for DIB claims); *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).  "An affirmative answer to question 1 or negative answers to questions 2 or 4 result in a determination of no disability.  Affirmative answers to questions 3 or 5 establish disability."  *Hines v. Bowen*, 872 F.2d 56, 58 (4th Cir. 1989).

The claimant bears the burden of proof at the first four steps of the evaluation.  *Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011).  At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy the claimant can perform.  *Id.*  In making this determination, an ALJ may call a vocational expert ("VE") to testify at the

---

[5] "Past relevant work" is work "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 416.960(b)(1); *see also* 20 C.F.R. § 404.1560(b)(1) (defining "past relevant work" for the purposes of DIB claims).  If the claimant can perform his or her past relevant work, a finding of "not disabled" is required.  20 C.F.R. § 416.920(a)(4)(iv); *see also* 20 C.F.R. § 404.1520(a)(4)(iv) (defining the step four inquiry for DIB claims).

[6] At the fifth step, the ALJ may, "'[i]n the ordinary case, . . . resort[ ] to the applicable medical vocational guidelines'" (also known as "the grids") to determine whether the claimant is disabled.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2.  "The grids 'take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.'"  *Id.* (alteration in original) (quoting *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)).  However, when a claimant has additional limitations beyond those contemplated by the grids, the ALJ cannot rely on the grids alone to establish nondisability.  *Id.*  In such cases, the testimony of a vocational expert ("VE") is generally taken.  *Smith v. Bowen*, 826 F.2d 1120, 1122 (D.C. Cir. 1987).

hearing as to whether, based on the claimant's RFC, he or she can perform other work that exists in the national economy.[7]  *Id.* at 90.

> **B.**     **Plaintiff's Disability Claims, Procedural History, and the Administrative Hearing**

Plaintiff was born on June 7, 1968, and has a twelfth-grade education.  ECF No. 12-2 at 41; ECF No. 12-5 at 5.  His earnings report shows that he worked on and off from 2009–2019.  ECF No. 12-5 at 24–25, 30.  Plaintiff reports that he has not worked since summer 2018.  ECF No. 12-2 at 41.

Plaintiff filed an application for SSI alleging disability on January 10, 2019.  ECF No. 12-5 at 2.  In that application, Plaintiff alleged disability based on scoliosis, hypertension, generalized anxiety disorder, major depressive disorder, acid reflux, and a right knee problem beginning in January 2017, but he later amended the alleged onset date to match the date the application was filed.  ECF No. 12-2 at 16, 42-43; ECF No. 12-6 at 3.  Plaintiff's application was denied at the initial level of review in May 2019, and upon reconsideration in October 2019. ECF No. 12-2 at 16.

Plaintiff requested a hearing in front of an ALJ, which was held telephonically on November 24, 2020.  ECF No. 12-2 at 16.  At the hearing, the ALJ took the testimony of Plaintiff and a VE.  *Id.* at 36.  Plaintiff testified that he stopped working in summer 2018 after his high blood pressure caused him to pass out and injure his back while working as a groundskeeper and

---

[7] In determining whether a claimant can perform jobs that exist in the national economy, a VE "may draw from a number of sources," including the Dictionary of Occupational Titles published by the Department of Labor, which "provides a brief description of occupations within the national economy and lists the capabilities that each occupation requires of a worker."  *Callahan v. Astrue*, 786 F. Supp. 2d 87, 90 (D.D.C. 2011); *see also* 20 C.F.R. § 404.1566(d)(1).

maintenance man.[8]  *Id.* at 41.  He testified that he receives treatment for his back pain, including muscle relaxers and topical pain relief, from Dr. Rachel Gougian.  *Id.* at 44.

Plaintiff further testified that he uses a cane to walk five days a week and tries to "see the real strength of [his] leg" by not using the cane on the other two days.  *Id.* at 44–45.  When asked how long he has used the cane, Plaintiff responded, "[I]t's been probably two months . . . .  Back then in 2018 I . . . kind of was using it but it wasn't—I didn't really have to use it, use it."  *Id.* at 45.  Plaintiff reported that he can walk approximately four blocks with the cane.  *Id.* at 46.  Without the cane, he testified that he could only go down the steps outside his apartment to the courtyard, using the handrail to aid his balance.  ECF *Id.* at 46–47.  He reported being able to stand for about 45 minutes and sit for about two hours before having to change positions.  *Id.* at 47.  He testified that he cannot kneel, stoop, or crouch.  *Id.* at 52.  Finally, Plaintiff reported carpal tunnel and arthritis that prevents detailed work with his hands.  *Id.* at 50–51.  He testified to being able to lift about ten pounds.  *Id.* at 47.

Plaintiff also testified about his mental illnesses.  He reported that he was prescribed Risperidone 3, a schizophrenia medication, to treat depression and "real bad anxiety."  *Id.* at 46.  Because of the medicine, he reported that he is "in an all right place in [his] mind," but he gets nervous around large groups of people.  *Id.*  He also reported hearing voices and seeing shadows moving in his peripheral vision.  *Id.* at 52.  Plaintiff further testified to a history of recreational drug use that ended after treatment in 2018.  *Id.* at 47-48.

Plaintiff also testified to his ability to complete household tasks.  He said he could shower and get dressed on his own but could not put on socks without assistance.  *Id.* at 48.  He gets

---

[8] Plaintiff initially testified that his last job was a groundskeeper which ended in 2018.  ECF No. 12-2 at 41.  At the hearing, Plaintiff agreed to amend the alleged onset date to the date of protective filing, January 10, 2019.  ECF No. 12-2 at 42-43.  When asked, "have you done any work that you've gotten paid for since January of 2019," Plaintiff responded, "No, sir."  ECF No. 12-2 at 43.

assistance from family members to carry his grocery bags when he goes shopping and laundry bags when he does laundry. *Id.* at 48-49.

Next, the ALJ asked the VE to classify Plaintiff's past work and answer a series of hypothetical questions. The VE explained that Plaintiff's past work as a warehouse worker was medium strength level and unskilled. *Id.* at 58. The ALJ then asked if a hypothetical person of the Plaintiff's age and education who could perform light work and "simple, routine tasks" without a pace of work requirement, could "occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, and balance," but could "never climb ropes, ladders, or scaffolds" and needed to avoid dangerous machinery and unprotected heights could do Plaintiff's past work. *Id.* The VE answered that the hypothetical person could not. *Id.* The ALJ asked if there would be jobs that hypothetical person could perform, and the VE identified router, office helper, and cleaner as possible positions. *Id.* at 58-59.

Next, the ALJ asked a series of questions further limiting the abilities of the above hypothetical person. The ALJ asked if any of the identified jobs would remain if the hypothetical person identified above was able to "frequently reach overhead in all directions and laterally with the left upper eternity and frequently handle and finger with the left upper extremity." *Id.* at 59. The VE said that the router and office helper positions would remain. *Id.* at 59. The ALJ then asked if the job availability would change if the hypothetical person were limited to "occasional changes in the work setting, occasional judgements or decision-making, and occasional interaction with coworkers and supervisors." *Id.* at 60. The VE identified the same jobs. *Id.* The ALJ then required that the hypothetical person use a cane. *Id.* The VE noted that the cleaner position would no longer be available, but a non-postal mail clerk job would. *Id.* at 60–61. Finally, the ALJ asked if the hypothetical person had all of the above limitations and could also only "stand and/or walk

a total of two hours in an eight-hour day." *Id.* at 61.  The VE reduced the number of available officer helper positions by 50% but stated the router and non-postal mail clerk positions would remain. *Id.*

Plaintiff's counsel then asked the VE a series of hypotheticals.  The attorney asked if a hypothetical person who is limited to lifting ten pounds and standing or walking for two hours in a day would be suited only for sedentary work.  *Id.* at 63–64.  The VE said yes.  *Id.* at 64.  The attorney also asked if a hypothetical person who needs a cane for "ambulation . . . balancing, standing, and walking" is limited to sedentary work, and the VE said yes.  *Id.*  The attorney asked about a hypothetical person who could only "occasionally handle and finger."  *Id.* at 70.  The VE said that this person would not be able to perform the positions that were identified.  *Id.*

Following the hearing, the ALJ denied Plaintiff's application for SSI in a decision issued on February 17, 2021.  *Id.* at 16-28. The Appeals Council denied Plaintiff's request for review on October 19, 2021, making the ALJ's decision final.  *Id.* at 2.

### C.    The ALJ's Decision

As noted, the ALJ issued his decision denying benefits in February 2021.  ECF No. 12-2 at 16-28.

#### 1.    Substantial Gainful Activity, Severe Impairment, and the Listings

At step one of the sequential five-part analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 10, 2019.  *Id.* at 18.  At step two, he determined that Plaintiff had the following "severe" impairments: depression, anxiety disorder, schizophrenia, mononeuropathy of the right lower extremity, and sciatica.  *Id.*

At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the severity of any of the impairments in the Listings.  *Id.* at 19–21.  Specifically, he

considered Listing 1.04 for spinal disorders, Listing 11.14 for peripheral neuropathy, and Listings 12.03, 12.04 and 12.06 for mental disorders. *Id.* at 19. As to Listing 1.04, the ALJ found that the record did not show nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis—at least one of which must be present to meet Listing 1.04. *Id.* The ALJ noted that Plaintiff "consistently presented with normal muscle strength." ECF No. 12-2 at 19. The ALJ determined Plaintiff did not meet the criteria for Listing 11.14 because he did not exhibit disorganization of the motor function in two extremities and there was no "marked" limitation. *Id.* Finally, the ALJ determined that Plaintiff did not meet any of the listings for mental disorders because his mental limitations do not result in one extreme limitation or two marked limitations. *Id.* at 20.

The ALJ next turned to Plaintiff's RFC.

### 2.    Plaintiff's RFC

The ALJ found that Plaintiff had the RFC to perform "light work[9] . . . except he can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ropes, ladders, and scaffolds." *Id.* at 21. Furthermore, Plaintiff "must avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights." *Id.* The ALJ also found that Plaintiff can perform simple, routine tasks with no production rate for pace of work and tolerate occasional interaction with the general public. *Id.*

In determining that RFC, the ALJ first found that Plaintiff's medically determinable ailments could reasonably be expected to cause his alleged symptoms. *Id.* at 23. However, the

---

[9] The regulations define "light work" as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). SSR 83-10 further explains that "the full range of light work requires standing or walking, off and on, for . . . approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5-6.

ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent" with the evidence in the record. *Id.*

In making that assessment and determining Plaintiff's RFC, the ALJ first considered evidence of Plaintiff's physical limitations arising from his "chronic back pain secondary to sciatica and complicated mononeuropathy of the right lower extremity." *Id.* At the outset, the ALJ noted that Plaintiff's treatment for his physical pain was infrequent and that he missed follow-up treatments. *Id.*. The ALJ found that these missed treatment opportunities undermined Plaintiff's allegations about the severity of his pain. *Id.* The ALJ also noted that the medical record indicated Plaintiff ambulated with a cane, but "there was no indication any provider prescribed the cane." *Id.*. Further, while Plaintiff exhibited upon physical examination paraspinal tenderness with decreased right lower extremity sensation and difficulty balancing on the right foot, the ALJ found that he otherwise "retained full range of motion, normal muscle strength of the upper and lower extremities, normal sensation of the upper extremities and left lower extremity, and normal balance on the left foot without evidence of misalignment, joint tenderness, effusions, or muscle atrophy." *Id.* The ALJ again emphasized that Plaintiff received only routine and conservative treatment for his physical pain, and there was no indication that he had ever been recommended for surgery. *Id.* The ALJ also noted that Plaintiff's testimony undermined his assertion of debilitating symptoms and limitations caused by his physical pain because he described performing daily activities, such as showering and dressing independently, cleaning his personal space, preparing simple meals, reading magazines, and using the internet, which the ALJ found inconsistent with the described pain. *Id.*. Finally, the ALJ noted that Plaintiff testified to not using a cane two days a week and "admitted" that he could climb and descend stairs occasionally without the assistance of a cane, "suggesting that he can indeed ambulate without the

use of a cane." *Id.* The ALJ concluded that, when considered as a whole, Plaintiff's physical condition warranted a limitation to light work, with the additional limitations noted above. *Id.*

The ALJ also reviewed the medical evidence concerning Plaintiff's mental limitations and determined that "the full longitudinal record [of mental distress] more than adequately supports" the mental condition RFC the ALJ determined (i.e., that he can perform "simple, routine tasks with no production rate for pace of work (e.g., assembly-line work)" and "can tolerate occasional interaction with the general public"). *Id.* at 21, 23. In reaching that conclusion, the ALJ noted that Plaintiff was diagnosed with Adjustment Disorder with mixed anxiety and depressed mood and prescribed Paxil and Risperdal in 2018. *Id.* While treating physicians had observed that Plaintiff occasionally reported depressed or anxious mood, the ALJ found that he otherwise presented as fully oriented with appropriate mood and intact recent and remote memory. *Id.* at 23-24; *see also* ECF No. 12-7 at 4, 8, 11, 13, 16, 18, 22, 28, 30. The ALJ also noted that Plaintiff had not been hospitalized for his mental impairments, had not received psychotherapy, and his history of substance abuse was "in remission." ECF No. 12-2 at 24. The ALJ again pointed to Plaintiff's reported daily activities, such as showering and dressing independently without reminders, preparing simple meals, cleaning his space, reading magazines, and using the internet, as evidence that his mental condition does not limit him as severely as he claims. *Id.*. Nevertheless, the ALJ limited Plaintiff's RFC "to simple routine tasks with no production rate for pace of work (e.g., assembly-line work)" because his "baseline, which appears to be a depressed and anxious mood, . . . could certainly interfere with his ability to concentrate." *Id.* The ALJ also found that his depressed and anxious mood supported "limiting him to occasional interaction with the general public." *Id.* "Overall," the ALJ found, Plaintiff's "lack of treatment; negative findings, which

10

include appropriate mood and affect and intact recent and remote memory. . .; and his retained abilities, . . . suggest he requires no greater limitations." *Id.*

Finally, the ALJ looked at the medical source opinion by Dr. Rachel Gougian dated September 28, 2020. *Id.* Dr. Gougian, who treated Plaintiff, concluded that he could "frequently and continuously" lift or carry less than ten pounds and occasionally lift or carry 50 pounds. ECF No. 12-2 at 24; *see also* ECF No. 12-7 at 76. She found that Plaintiff could stand or walk up to two hours in an eight-hour workday and needed the use of a cane to ambulate. ECF No. 12-2 at 24; *see also* ECF No. 12-7 at 76. She also determined that Plaintiff could only rarely use his left arm for reaching, handling, fingering, feeling, pushing, or pulling, but that he could use the right arm for all of those functions. ECF No. 12-2 at 24; *see also* ECF No. 12-7 at 77. Finally, the ALJ asserted that Dr. Gougian noted that Plaintiff would be off task less than 25% of a workday due to attention and concentration issues. ECF No. 12-2 at 24.

In assessing Dr. Gougian's opinion, the ALJ found it to be "somewhat persuasive" because it was "somewhat consistent" with the evidence but found that Dr. Gougian's proposed limitations with respect to Plaintiff's left upper extremity, required use of a cane to ambulate, and impairments to concentration were not supported in the record. *Id.* Finally, he found that Dr. Gougian "failed to provide any support or justification" for her opinion that Plaintiff would be off task less than 25% of a typical workday. *Id.*

### 3. Conclusion of the Five-Step Sequential Inquiry

At step four, the ALJ concluded that Plaintiff could not perform his past relevant work as a warehouse worker based on the VE's testimony. *Id.* at 26. Further relying on the testimony of the VE, the ALJ determined that an individual with Plaintiff's RFC would be able to perform the occupations of "router," "office helper," "cleaner," and "non-postal mail clerk." *Id.* The ALJ also

relied on the VE's responses to "more limiting hypotheticals," which included the following limitations: "standing or walking for a total of 2 hours per day, manipulative limitations, the requirement to use a cane for ambulation, and limitations addressing deficits in understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace." *Id.* The VE testified that a hypothetical person with those limitations would still be able to find work in the national economy. *Id.* Therefore, the ALJ concluded, in the alternative, that even if Plaintiff had a more restrictive residual functional capacity, he could find work in the national economy. *Id.*

The ALJ concluded that, considering Plaintiff's "age, education, work experience, and residual functional capacity," Plaintiff was not disabled because he is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 27.

## II.    LEGAL STANDARD

A federal district court has jurisdiction over a civil case challenging a final decision of the Commissioner. 42 U.S.C. § 405(g). A reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and the correct application of the relevant legal standards. *Id.*; *Butler*, 353 F.3d at 999.

"[T]he plaintiff bears the burden of demonstrating that the Commissioner's decision is not based on substantial evidence or that incorrect legal standards were applied." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It requires "more than a scintilla [of evidence], but can be satisfied by something less than a

preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)). Ultimately, the substantial evidence standard is a "low bar," *Louisiana Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021), and "requires considerable deference to the decision rendered by the ALJ," *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995); *see also Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency [under the substantial evidence standard] is not high."). The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment "concerning the credibility of the evidence with its own." *Crosson*, 907 F. Supp. at 3; *see also Butler*, 353 F.3d at 999 (finding that the district court's role is not to reweigh the evidence but only to determine whether the ALJ's findings are "based on substantial evidence and a correct application of the law"). However, "this standard of review requires the Court to carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009); *see also Lane-Rauth*, 437 F. Supp. 2d at 65 ("[T]his standard of review 'calls for careful scrutiny of the entire record,' to determine whether the Commissioner, acting through the ALJ, 'has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits[.]'" (second alteration in original) (quoting *Butler*, 353 F.3d at 999)). Importantly, the Court's job is to "consider the grounds actually proffered by the ALJ" rather than to make those determinations for itself, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017), or credit "post-hoc rationalization[s]" advanced by the parties, *Cooper v. Berryhill*, No. 16-cv-1671, 2017 WL 4326388, at *5 (D.D.C. Sept. 28, 2017); *see also SEC v. Chenery Corp.*, 332 U.S.

194, 196 (1947) (holding that a reviewing court "must judge the propriety of [an agency's judgment] solely by the grounds invoked by the agency"); *Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) (citing *Chenery*, 332 U.S. at 196).  Finally, courts "must also be mindful of the harmless-error rule.  Consequently, even if [the court] perceive[s] error," it must "affirm the Commissioner's decision unless the error is prejudicial."  *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021).

## III.   DISCUSSION

Plaintiff makes two arguments for remand:  (1) that the decision did not contain an adequate rationale for why the ALJ found Plaintiff's allegations of disabling mental limitations less than credible, and (2) that the ALJ found the opinion of Dr. Gougian to be less than fully persuasive without properly analyzing the factors of supportability and consistency.  For the reasons stated below, the Court finds neither argument convincing.

### A.    The ALJ Properly Considered Plaintiff's Mental Limitations

Plaintiff alleges that the ALJ failed to apply the proper legal standard and to explain adequately his reasoning for concluding that Plaintiffs mental impairments were not as severe as Plaintiff asserted.  Specifically, Plaintiff urges that, to account for his anxiety, the ALJ should have imposed more limits in his RFC than restricting him to only "occasional interaction with the general public."[10] ECF No. 20-1 at 11.  Rather, Plaintiff contends that a more restrictive limitation

---

[10] Despite the significant legal headwinds it has faced in this Court, Plaintiff does not challenge the ALJ's inclusion of the phrase "simple, routine tasks with no production rate for pace of work" as part of his mental health RFC. *See, e.g., Mirlin T. v. Kijakazi*, No. 20-cv-960, 2021 WL 9217635, at *9 (D.D.C. Aug. 24, 2021) (finding that the phrase "fast pace or strict production quotas," without further explanation, was vague in its phrasing), *report and recommendation adopted*, 2022 WL 3139032 (D.D.C. Aug. 5, 2022); *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019) (finding that RFC language limiting claimant to work which did not "require[e] a production rate or demand pace" did not give the judge enough information to understand the meaning of those terms, and thus frustrated meaningful appellate review); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[An] ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace.  More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis." (internal citations omitted)).  Any

on his ability to interact with coworkers and supervisors was warranted. *See id.*  This argument fails.  The ALJ undertook the required analysis in formulating the challenged portion of Plaintiff's RFC, and the limitation the ALJ imposed to address Plaintiff's anxiety when interacting with others is supported by substantial evidence.

In formulating Plaintiff's RFC, the ALJ acknowledged and considered the record of Plaintiff's mental health symptomatology and limitations.  The ALJ acknowledged Plaintiff's diagnosis of Adjustment Disorder with mixed anxiety and depressed mood, as well as his schizophrenia.  ECF No. 12-2 at 18, 20, 21.  He also considered that Plaintiff was prescribed Paxil and Risperdal (e.g., depression and antipsychotic medications), and received treatment and management of his psychiatric medication through Dr. Gougian.  *Id.* at 23-24.  The ALJ also reviewed the medical record and observed that it reflected, on occasion, that Plaintiff was reported with a "depressed or anxious mood."  *Id.* at 23; *see also, e.g.*, ECF No. 12-7 at 16, 26.  Considering this "baseline," which the ALJ characterized as a "depressed and anxious mood . . . that could certainly interfere with [Plaintiff's] ability to concentrate," the ALJ limited him to only simple, routine tasks with no production rate for pace of work (e.g., assembly line work).  EF No. 12-2 at 24.  The ALJ also found that Plaintiff's depressed and anxious mood supported limiting him to occasional interaction with the general public.  *Id.*

Plaintiff argues that the ALJ did not create a "logical bridge" to show how he concluded that Plaintiff should be limited to occasional interaction with the general public, rather than a more restrictive prohibition that would include further "restrictions in interacting with supervisors or coworkers."  ECF No. 20-1 at 12.  Plaintiff is correct that the law requires an ALJ to build a

---

challenge Plaintiff could have raised with respect to the inclusion of that phrase in his RFC is therefore forfeited.  *See, e.g.*, *Ellison v. Saul*, No. 20-cv-579, 2020 WL 7753294, at *11 (D.D.C. Dec. 8, 2020) (noting that a party who fails to raise a claim of error forfeits the claim), *report and recommendation adopted*, 2020 WL 7714734 (D.D.C. Dec. 29, 2020).

"logical bridge" from the evidence to the RFC by explaining which "particular pieces of evidence led" to the limitations imposed. *Lane-Rauth*, 437 F. Supp. 2d at 67. But the ALJ did that here with respect the RFC limiting Plaintiff to only occasional interaction with the public. After acknowledging that Plaintiff had some limitation in interacting with the public, the ALJ concluded that "the full longitudinal record fails to support the presence of greater mental limitations than those" included in the RFC. ECF No. 12-2 at 24. The ALJ cited multiple pieces of record evidence when making this determination. First, he pointed out that Plaintiff consistently presented fully oriented with appropriate mood and affect and intact recent and remote memory when treated by medical professionals. *Id.* at 23-24; *see also* ECF No. 12-7 at 81, 84, 88, 92. Second, there was no evidence in the medical record that Plaintiff received significant psychotherapy or had ever attended inpatient treatment or hospitalization for his mental health. ECF No. 12-2 at 24. Third, the ALJ noted that Plaintiff's history of substance abuse was in remission and that his recent treatment records did not reference any alcohol or drug abuse. *Id.* Fourth, at step three of the analysis when finding that Plaintiff had only a moderate limitation in interacting with others, the ALJ considered that, "[d]espite his alleged difficulties, [Plaintiff] testified that his family helps him grocery shop and perform laundry chores, suggesting some ability in this area." *Id.* at 20. Finally, the ALJ found (again at step three) that there was no evidence in the record that Plaintiff had shown "any aggression toward his health care providers." *Id.* For all these reasons, the ALJ reasonably found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 23. "Overall", the ALJ concluded that Plaintiff's "lack of treatment; negative findings, which include appropriate mood and affect and intact recent and remote memory . . . ;

and his retained abilities, as detailed above, suggest he requires no greater [mental health] limitations" than those found in the RFC.  *Id.* at 24.

That explanation, following the ALJ's consideration of the whole record, provides a sufficient "logical bridge" between the record evidence and the mental health limitations in the RFC.  *See Goodman v. Colvin,* 233 F. Supp. 3d 88, 112 (D.D.C. 2017) (finding the ALJ sufficiently created a "logical bridge" by considering the whole record and discussing which evidence he found credible).  That explanation is also more than sufficient to satisfy the substantial evidence standard which, as previously noted, is a "low bar," *Louisiana Pub. Serv. Comm'n*, 20 F.4th at 7, that "requires considerable deference to the decision rendered by the ALJ," *Crosson*, 907 F. Supp. at 3.  Here, the ALJ considered the evidence in the record of Plaintiff's limitations, including his testimony of debilitating symptoms, and explained why he found other record evidence to the contrary more persuasive.  ECF No. 12-2 at 21-25.  That is all that the ALJ was required to do, and given that he did so, the court is not permitted to substitute its own judgment for that of the Commissioner.  *Crosson*, 907 F. Supp. at 3 ("The reviewing court may not reweigh the evidence presented to it, nor may it replace the [Commissioner's] judgment concerning the credibility of the evidence with its own."); *Chevalier v. Shalala*, 874 F. Supp. 2, 3 (D.D.C. 1994) (same).

That is especially so in a case, as here, where the plaintiff has not shown that the ALJ ignored material evidence in the record indicating that more severe limitations were warranted.  *See Ward v. Berryhill*, 246 F. Supp. 3d 202, 209–10 (D.D.C. 2017) (finding the ALJ had not satisfied the substantial evidence standard where he completely ignored evidence).  Plaintiff points to no unaddressed evidence in the record demonstrating that he could not interact with supervisors or co-workers or had any trouble interacting with peers or authority figures.  While Plaintiff criticizes the ALJ's evaluation of the evidence that he could interact with others, he provides no

proof otherwise, aside from his own testimony at the hearing, which the ALJ acknowledged and addressed in the RFC.  ECF No. 12-2 at 22–23.  As the ALJ noted, Plaintiff testified that "he is okay right now in his mind; however, he becomes nervous around people due to anxiety" and "avoids large groups of people."  ECF No. 12-2 at 22.  Plaintiff also testified that "he was prescribed Risperdal to keep him calm and to prevent him from obsessively worrying when he is in a crowd." *Id.*  Plaintiff's impairment—an anxiety-based aversion to crowds that he manages through medication—fits well with the RFC limitation the ALJ actually imposed (i.e., no more than occasional interaction with the public), and is a far cry from what Plaintiff urges here (i.e., a more severe restriction concerning interacting with supervisors or coworkers).  ECF No. 20-1 at 12.  Also suggesting that Plaintiff's aversion to crowds is well-managed and less than severe is, as the ALJ noted, the absence of any evidence during the relevant period that Plaintiff received psychotherapy or sought treatment from anyone other than his family medicine provider, Dr. Gougian, for his mental health impairments.  ECF No. 12-2 at 24; *see also* 20 C.F.R. § 416.929(c)(3)(iv-v) (indicating that the effectiveness of medication and a claimant's lack of treatment is probative in evaluating a claimant's allegation of disabling symptoms); SSR 96-7p, 1996 WL 374186, at *7 (stating that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").  On the other hand, as the ALJ observed, Plaintiff consistently had appropriate psychiatric examinations by Dr. Gougian, there was no evidence showing any aggression toward his health care providers, and "[d]espite his alleged difficulties, [Plaintiff] testified that his family helps him grocery shop and perform laundry chores, suggesting some ability" to interact with others.  ECF No. 12-2 at 20; *see also* 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of

the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.").  On this record, the ALJ reasonably found that Plaintiff did not require any limitations with respect to interacting with supervisors or coworkers or that his limitation with respect to interacting with others was not wholly work-preclusive.[11]

Because the ALJ rested his mental health RFC limitations on substantial evidence, Plaintiff's motion for reversal on this ground will be denied.

**B.      The ALJ properly considered and articulated his analysis of why he found the medical opinion of Dr. Gougian to be less than fully persuasive.**

Plaintiff next alleges that the ALJ failed to properly consider and articulate his analysis of the factors of supportability and consistency which led to his finding Dr. Gougian's opinion less than fully persuasive.  ECF No. 20-1 at 18.  This argument also fails.

SSA regulations governing claims filed, like this one, after March 27, 2017, provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion," including an opinion from a medical source who has treated the claimant.[12]

---

[11] In any event, the VE testified that even if Plaintiff were restricted to only occasional interaction with supervisors and coworkers, all identified jobs would still be available to him in the national economy.  ECF No. 12-2 at 60.  Thus, any error the ALJ may have made by not including such a restriction in Plaintiff's RFC would be harmless. *See Shinseki*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

[12] Prior to the revision of the regulations effective on March 27, 2017, an opinion from a claimant's treating physician was entitled to controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  The D.C. Circuit had "a 'treating physician rule' of [its] own," which similarly required the fact-finder to give a treating physician's opinion controlling weight "unless contradicted by substantial evidence." *Butler v. Barnhart*, 353 F.3d 992, 1003 (D.C. Cir. 2004) (quoting *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993)).  The new regulations, which state that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources," 20 C.F.R. § 404.1520c(a), are thus inconsistent with that existing D.C. Circuit precedent.

In *National Cable & Telecommunications Association v. Brand X Internet Services*, the Supreme Court held that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to . . . deference [under *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984)] only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves

20 C.F.R. § 416.920c(a).  Instead of assigning weight to medical opinions, an ALJ is required to

consider the persuasiveness of each medical opinion.  *Id.*  The most important factors in the

persuasiveness analysis are (1) supportability—that is, how well the medical source supported the

opinion with "objective medical evidence and supporting explanations"—and (2) the consistency

of the opinion with other evidence in the record.  *Id.* at § 416.920c(b)(2), (c)(1)–(2).  Of lesser

importance to the persuasiveness analysis are the medical source's relationship with the claimant,

including the length of the treatment relationship, the frequency of examinations, the purpose of

the treatment relationship, the kinds and extent of examinations and testing performed, and

whether the medical source examined the claimant or merely reviewed evidence; the specialization

of the medical source; and "[o]ther factors" such as the medical source's familiarity with other

evidence or understanding of the SSA's policies. *Id*. at 416.920c(c)(3)–(5).

Because the governing regulations stipulate that the supportability and consistency factors

are the "most important" an ALJ must consider when "evaluat[ing] the persuasiveness of medical

opinions," ALJs must "explain how [they] considered the supportability and consistency factors

for a medical source's medical opinions" in their decisions.  20 C.F.R. § 416.920c(a), (b)(2); *see*

*also Carolyn W. v. Comm'r of Soc. Sec. Admin*., No. 20-cv-00423, 2022 WL 4244214, at *4 (S.D.

Ohio Sept. 15, 2022) ("The regulation therefore imposes a burden of explanation, or mandatory

---

no room for agency discretion." 545 U.S. 967, 982 (2005).  The D.C. Circuit has not yet evaluated whether its treating physician rule survived the revision of the Social Security regulations.  However, relying on the analysis in *Brand X*, two other Circuits have recently held that prior precedent that is inconsistent with the new Social Security regulations does not trump the new rules.  *See Rogers v. Kijakazi*, 62 F.4th 872, 877–80 (4th Cir. 2023); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022).  Indeed, *Harner* held that Eleventh Circuit precedents "establishing and applying the treating-physician rule" were no longer good law.  *Id.* at 896; *accord Glasby v. Soc. Sec. Admin., Comm'r*, No. 21-12093, 2022 WL 1214015, at *3 (11th Cir. Apr. 25, 2022).  This Court, like a number of other district courts, agrees that the new regulations are binding upon it and abrogate prior inconsistent precedent like the D.C. Circuit's own treating physician rule.  *See, e.g.*, *Sandoval v. Kijakazi*, No. 21-cv-471, 2023 WL 4231007, at *5 n.7 (D.N.M. June 28, 2023); *C.D.I. v. Comm'r, Soc. Sec. Admin*, No. 22-cv-629, 2023 WL 2242505, at *4–5 (D. Colo. Feb. 27, 2023), *appeal docketed*, No. 23-1139 (10th Cir. Apr. 28, 2023); *Miser v. Kijakazi*, No. 21-cv-977, 2023 WL 336162, at *3 n.2 (E.D. Ark. Jan 20, 2023); *Alexis R. v. Kijakazi*, No. 21-cv-162, 2022 WL 4298361, at *7 (D. Conn. Sept. 19, 2022) (collecting cases); *Trogdon v. Comm'r of Soc. Sec.*, No. 21-cv-387, 2022 WL 2954090, at *6 (E.D. Cal. July 26, 2022), *appeal docketed*, No. 22-16461 (9th Cir. Sept. 26, 2022).

articulation, upon ALJs."). That said, there is no specific format required for addressing supportability and consistency, and those terms need not be used in the opinion, provided that there is sufficient explanation for a reviewing court to determine that the ALJ analyzed those factors. *See e.g.*, *Jones v. Barnhart*, 364 F.3d 501, 504–05 (3d Cir. 2004) (noting that as long as there is sufficient development of the record and explanation to allow for judicial review, the ALJ is not required to use a particular format); *Gunn v. Comm'r of Soc. Sec.*, No. 20-cv-382, 2022 WL 11397816, at *4 (M.D. Fla. Mar. 23, 2022) ("While the regulations require the ALJ to articulate consideration of the supportability and consistency factors when evaluating a medical opinion from a medical source, they do not require the ALJ to use any specific language to articulate consideration of the factors.  As long as the evaluation addresses the substance of the factors, the ALJ meets the articulation requirement." (internal citations omitted)); *Cody v. Comm'r of Soc. Sec.*, Civ. A. No. 20-2620, 2021 WL 6012228, at *10 (D.S.C. Oct. 27, 2021) ("Although the ALJ here did not specifically reference the 'supportability' and 'consistency factors while evaluated Dr. DeGarmo's opinion, the ALJ sufficiently addressed and considered these factors."), *report and recommendation adopted*, 2021 WL 6011067 (D.S.C. Dec. 17, 2021).  As for the remaining, less important factors, the ALJ must consider them, "but is not required to" expressly explain that consideration the decision.  20 C.F.R. § 416.920c(b)(2); *see also Morales v. Berryhill*, 484 F. Supp. 3d 130, 143 (S.D.N.Y. 2020) (where the ALJ's "reasoning and adherence to the regulation[s] are clear," a "slavish recitation of each and every" factor to be considered in analyzing a medical opinion is not required (*quoting Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013))).

Here, Dr. Gougian concluded that Plaintiff could "frequently and continuously" lift or carry less than ten pounds and occasionally lift or carry 50 pounds; could stand or walk less than

two hours in an eight-hour workday and needed the use of a cane to ambulate; could only rarely use the left arm for reaching, handling, fingering, feeling, pushing, or pulling, but that he could use the right arm for all of those functions; and would be off task less than 25% of a workday due to attention and concentration issues.[13]  ECF No. 12-2 at 24; *see also* ECF No. 12-7 at 76–77.

Here the ALJ properly examined Dr. Gougian's medical source opinion under 20 C.F.R. § 416.920c and adequately explained why he found it only "somewhat persuasive," citing the factors of both consistency and supportability in doing so.  ECF No. 12-2 at 24.  Specifically, the ALJ stated:

> I find [Dr. Gougian's] opinion is somewhat persuasive. While the opinion is somewhat consistent with the evidence, the left upper extremity limitations are not entirely supported by evidence showing he retained normal muscle strength in both upper extremities. Moreover, the claimant testified that he could ambulate without a cane twice a week, which is not entirely supported by her opinion that he requires a cane for ambulation. Additionally, the evidence failed to show any significant attentional difficulties during examination despite her finding that his impairments would interfere with his concentration. Further, Dr. Gougian failed to provide any support or justification for her opinion that he would be off tasks less than 25% of a typical workday.

ECF No. 12-2 at 24-25 (internal citation to the record omitted).  This assessment addressed the consistency factor in three ways—specifically, the ALJ found Dr. Gougian's (1) left upper extremity limitation was not entirely consistent with the record evidence that Plaintiff retained "normal muscle strength in both upper extremities"; (2) opinion that Plaintiff required a cane for ambulation was not entirely consistent with Plaintiff's testimony that he could ambulate without a

---

[13] This appears to be typographical error in the ALJ's decision.  In his report, Dr. Gougian actually marked the box that indicated Plaintiff would be off task for *greater than* 25% of the workday, not off task for *less than* 25% of the workday.  ECF No. 12-7 at 75.  This error appears harmless, and Plaintiff does not argue otherwise.  The ALJ's determination that Dr. Gougian "failed to provide any support or justification for her opinion that [Plaintiff] would be off tasks less than 25% of a typical workday," ECF No. 12-2 at 24–25, is equally applicable—if not more so—to Dr. Gougian's actual opinion that Plaintiff would be off task for greater than 25% of the typical workday.

cane twice a week; and (3) conclusion that Plaintiff had impaired concentration was not consistent with the record evidence that Plaintiff "failed to show any significant attention difficulties during examination." *Id.* The ALJ also addressed the supportability factor when he found that Dr. Gougian "failed to provide support or justification for her opinion that [Plaintiff] would be off tasks less than 25% of a typical workday." *Id.*

By explaining how Dr. Gougian's opinion was only "somewhat persuasive" because it was not entirely consistent with other record evidence, and how it was—at least in one respect—not well supported by either objective medical evidence or other explanation cited within the opinion, the ALJ properly considered both the consistency and supportability factors. In *Cody*, the court found a sufficient discussion of consistency for one medical opinion where the ALJ simply discussed the opinion's relation to other evidence such as medical treatment records even though the ALJ did not make those comments specifically in reference to the medical opinion's persuasiveness. *See Cody*, 2021 WL 6012228, at *6-7. Here, the ALJ not only mentioned differences between the medical source opinion and other record evidence, but he also explained why he found those differences important for assessing the persuasiveness of the medical source opinion. *See* ECF No. 12-2 at 24. Similarly, in *Cody*, evidence that the medical source opinion had been corrected and treatment notes were sometimes taken incorrectly was a sufficient evaluation of supportability because the court could follow the ALJ's reasoning. *Cody*, 2021 WL 6012228, at *6. Here, the Court has no difficulty following the ALJ's reasoning because he explicitly discussed how Dr. Gougian did not support her conclusion with respect to Plaintiff being off task during the workday.

Overall, the Court concludes that the ALJ's assessment that Dr. Gougian's opinion was only "somewhat persuasive" was sufficiently supported and consistent with the requirements of

20 C.F.R. § 416.920c.  ECF No. 12-2 at 25.  Accordingly, Plaintiff's motion on this ground will be denied.

<h2 style="text-align:center">IV.   CONCLUSION</h2>

For the reasons stated above, the Court will enter an order denying Plaintiff's motion for reversal and granting the Commissioner's motion for affirmance.


Date: August 8, 2023

                                        _____

                                        G. MICHAEL HARVEY
                                        UNITED STATES MAGISTRATE JUDGE